IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2005

## STATE OF TENNESSEE, TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. D. H., ET AL.

**Appeal from the Circuit Court for Perry County**
**No. 3358     Robert E. Lee Davies, Jr., Judge**

---

**No. M2004-1043-COA-R3-JV - Filed March 21, 2006**

---

FRANK G. CLEMENT, JR., J., dissenting.

I concur with the legal principles set forth in the majority opinion and particularly with the recognition of the importance of affording a parent an opportunity to request appointed counsel, and when appropriate, a hearing and due inquiry on the request for appointed counsel in dependent and neglect proceedings. I, however, respectfully dissent, believing the facts, particularly those demonstrating the irresponsible acts and omissions of David H. and Mary Ellen H. in seeking appointed counsel and then retaining separate counsel, are sufficient to affirm the trial court.

The ruling of the majority is based in part on *State v. R.D.V.*, E2004-01216-COA-R3-PT, 2005 WL 623246 (Tenn. Ct. App. Mar. 17, 2005), which held that a trial court should make an adequate inquiry in response to an affidavit of indigency, and if its failure to do so results in the party being improperly denied the right to counsel, the court's order may be vacated on appeal.[1] Although I am in full agreement with this principle, I do not believe the trial court failed to make an adequate inquiry. Moreover, I do not believe the court failed to consider the appropriate factors when they were presented to the court by the parents, or that the parents were improperly denied the right to appointed counsel.

The trial court was presented with two opportunities to address the parents' request for appointed counsel, once at the inception of this action at the circuit court level on November 21, 2003, and again on February 11, 2004, the day of the trial in circuit court.

The parents requested appointed counsel at the inception of this action in the Circuit Court of Perry County. Circuit Court Judge Harris acted appropriately by requiring the parents to complete the standardized form, an affidavit. The parents were under an affirmative duty to disclose their income, assets, liabilities, and expenses so the court could make a determination whether to grant

---

[1] The trial court is to make an inquiry in accordance with Tenn. Code Ann. § 40-14-202, to determine whether a defendant is indigent and therefore entitled to an appointed counsel. *See also* Tenn. S. Ct. R. 13(e).

or deny the request for appointed counsel or whether to make a further inquiry to determine their eligibility. For reasons unexplained by the record, the parents informed the trial court they were both employed, earning a combined income in excess of $40,000[2] and that they owned three automobiles. They did not, however, disclose any liabilities. Significantly, they did not disclose to Judge Harris on November 21, 2003 that each of them had a $55 per week child support obligation or that David H. had an insurance expense of $60 a week. These facts were not disclosed to the court until the morning of trial.

The trial court is to make an inquiry, in accordance with Tenn. Code Ann. § 40-14-202, to determine whether a defendant is entitled to an appointed counsel. *See also* Tenn. S. Ct. R. 13(e). The statute and rule combine to place an appropriate burden on the trial court to make a "due inquiry" when determining whether to appoint counsel or deny the request for appointed counsel. The trial court denied the request at the hearing on November 21, 2003 based upon the finding the parents' combined income was in excess of $40,000 annually. Specifically, Judge Harris signed the portion of the form order that read, "[i]t appearing, based upon the affidavit of indigency filed in this cause, and after due inquiry made, that the defendant is not an indigent person as defined by law," and to which Judge Harris added in his own hand, "considering combined income of husband and wife."

Our review of a trial court's decision to appoint or not appoint counsel is subject to the abuse of discretion standard. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998)). Under that standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge*, 42 S.W.3d at 85 (Tenn. 2001)(citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn.2000), *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn.2000)). A trial court abuses its discretion when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Eldridge,* 42 S.W.3d at 85 (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

The majority opinion correctly notes that the entitlement to appointed counsel is not merely a matter of income or indigency. It is a more complex question of whether the litigant possesses sufficient means to pay reasonable compensation for the services of a competent attorney. *See* Tenn. Code Ann. § 40-14-201. Whether an income in excess of $40,000 a year obviated the need for the trial court to make additional inquiries may be subject to disagreement by reasonable people. Moreover, whether the parents presented sufficient countervailing evidence at the hearing to establish that in spite of an aggregate income of $40,000 a year, they did not possess sufficient means to pay reasonable compensation for the services of a competent attorney may be subject to disagreement by reasonable people.

I am, nevertheless, unable to conclude the trial court acted without logic or reasoning to deny the parents' request when the decision was based upon uncontroverted evidence, provided by the

_____

[2]Their affidavits listed weekly earnings totaling $798.

-2-

parents, that their collective income was in excess of $40,000 a year and they had no significant expenses or liabilities. To the contrary, I contend reasonable minds could disagree as to the propriety of the decision to deny the request for appointed counsel based upon an income of $40,000 a year. I am also unable to conclude the decision resulted in an injustice. This is because the hardship imposed on the parents, the denial of appointed counsel, was a result of the facts they presented and failed to present to Judge Harris. Therefore, I find no error with the extent of the trial court's inquiry and the resulting decision on November 21, 2003.

Eleven weeks passed before the parents chose to inform the court they had not retained counsel. That occasion was the morning of trial, February 11, 2004, a trial for which eighteen (18) witnesses had been summoned to testify. The parents gave no excuse for waiting until the morning of trial to make their second request for appointed counsel. The Department of Childrens' Services objected to the late request for appointed counsel, which would have necessitated a delay of the trial, contending the parents could have and should have filed their motion earlier. Judge Davies, who was to preside over the trial, agreed and denied the motion.

Waiting until the morning of trial was yet another of the parents' many irresponsible acts and omissions. Moreover, when the parents sought the appointment of counsel on the morning of trial, they submitted affidavits on the same form used eleven weeks earlier. This time each parent disclosed a child support obligation of $55 per week, and David H. disclosed an insurance expense of $60 per week. No explanation was given for the new disclosures or why they were not previously disclosed. Moreover, there is no indication the newly disclosed expenses were incurred since the first request for appointed counsel. After considering the belated second request for appointed counsel, Judge Davies advised that he would not go behind the previous decision to deny the request. Although it was not expressly stated, it appears the court applied the doctrine of res judicata along with a little judicial deference.

The only "new" facts presented with the second request were letters from two attorneys confirming the parents had made two unsuccessful attempts to retain counsel during the preceding eleven weeks. The new facts prove little more than the minimal efforts made by the parents during the eleven weeks since their request for appointed counsel had been denied. Moreover, these facts do little to support a claim of reasonable efforts to retain counsel. To the contrary, the letters combined with the parents' statements at the hearing prove the parents only approached two attorneys over an eleven-week period. The letter from Legal Aid provides the opinion of the author concerning how important it was for the parents to obtain counsel; however, the parents' conduct after receiving the benefit of this advice was to wait until two days prior to the trial to contact one attorney.[3] The other letter, from the only attorney in private practice the parents attempted to retain during the critical eleven weeks, confirmed nothing more than the late date they contacted the

---

[3]The attorney's letter was dated February 9, and the trial began on February 11. There is no evidence in the record to suggest the letter was subsequent to the date the parents contacted the attorney.

attorney and his fee requirements.[4] The two letters and facts presented by the parents on the morning of trial establish little other than proof of a pattern of neglectful, indeed, irresponsible conduct concerning a very important matter, the legal rights and responsibilities of parents and children.

The only aspect of the parents' belated second request for appointed counsel deserving of a second assessment was the fact the parents had not retained counsel to represent them, and it was the morning of trial. That important fact, however, was undermined by the parents' failure to make reasonable efforts to retain counsel, which negated the contention they did not possess sufficient means to pay reasonable compensation for the services of an attorney. The parents' failure to establish they made reasonable efforts to retain counsel since being found non-indigent took away any justifiable basis to contend the trial court should conduct a second "due inquiry."

It should be further noted the trial court was not dealing with uneducated litigants. To the contrary, David H. was well educated; he possessed an Associate's Degree and worked as a crane operator, and Mary Ellen H. was employed as a clerk. Furthermore, the parents were not unaccustomed to court proceedings. The record indicates the parents had a long history of legal problems and court hearings pertaining to their children in South Carolina and Tennessee.

Although our courts should be hesitant to deprive a person of the right to counsel where such a right exists, the trial court must be afforded the latitude to balance the rights of parents with those of the children and the public's interest in fair and efficient judicial proceedings. Delays such as those necessitated by irresponsible litigants who seek continuances on the morning of trial should be kept to a minimum. Moreover, irresponsible litigants, indigent parents included, should not be rewarded for their irresponsible acts and omissions. No justifiable reason was provided by these parents for waiting until two days before trial to contact an attorney in private practice or waiting until the morning of trial to seek appointment of counsel and the continuance it would have necessitated, especially realizing that eighteen witnesses were waiting in the wings.[5]

The decision of Judge Davies to deny the belated second request for appointed counsel is subject to the same standard of review as the earlier decision of Judge Harris and I am unable to conclude that he abused his discretion by denying the request for appointed counsel and the continuance of the trial that an appointment of counsel would necessitate. To the contrary, I submit reasonable minds could disagree as to the propriety of the decision to deny the request for appointed counsel the morning of trial. Moreover, I am also unable to conclude the decision resulted in an injustice as, like before, the hardship imposed on the parents was the direct result of their own lack of diligence in attempting to retain counsel. Therefore, I find no error with the extent of the trial court's inquiry and the resulting decision on November 21, 2003.

---

[4]Although Perry County is not blessed with an abundance of attorneys, there are other attorneys available to handle matters such as this. Moreover, the adjoining counties, Hickman, Lewis, and Humphreys, offer a more than adequate supply of attorneys who regularly practice in the courts of Perry County.

[5]Eighteen witnesses testified during the two-day trial including six social workers, one of the families that had custody of the children, the three older children, and neighbors and acquaintances of the parents.

Accordingly, I would affirm the decisions of Judge Harris and Judge Davies to deny the requests for appointed counsel.

_____
FRANK G. CLEMENT, JR.,  JUDGE